UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMUEL ENCARNACION,

                Plaintiff,

– against –

MICHELLE FOGGIE, *Clerk of the Bronx County Supreme Court Criminal Division,* and JOHN SAMPUGNARO, *the motion clerk on September 13, 2018,*

                Defendants.

**OPINION & ORDER**

22 Civ. 1733 (ER)

RAMOS, D.J.:

    Samuel Encarnacion, who is currently incarcerated at Five Points Correctional Facility, brings this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that Michelle Foggie and John Sampugnaro (collectively, "Defendants") interfered with his postconviction submissions in his New York state court criminal proceedings. Doc. 19. Before the Court is Defendants' motion to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 34. For the reasons stated below, the motion is GRANTED.

I.    BACKGROUND

    A.  Factual Background[1]

    Samuel Encarnacion was convicted, after a jury trial, of second-degree murder, second-degree attempted murder, and two counts of first-degree assault. Doc. 19-1 at 186. He was sentenced on December 19, 2007 to a term of twenty years to life on the

---

[1] The following facts are based on the allegations in the complaint, which the Court accepts as true for the purposes of the instant motion. *See, e.g., Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). In adjudicating a motion to dismiss, a court may also consider exhibits to the complaint, any statements or documents incorporated in it by reference, and documents integral to it. *Vogel v. TakeOne Network Corp.*, No. 22 Civ. 3991 (ER), 2023 U.S. Dist. LEXIS 144922, at *10 (S.D.N.Y. Aug. 16, 2023) (citing *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014)).

murder count, to run consecutively with three concurrent terms of twenty years imprisonment on the attempted murder and assault counts.  *Id.*

On August 29, 2018, Encarnacion mailed a motion to vacate the judgment against him, pursuant to CPL § 440.10,[2] to Chief Clerk Michelle Foggie at the Bronx County Hall of Justice (the "August 2018 Motion").  Doc. 19 ¶ 5.  Encarnacion's certified mail receipts show that the motion arrived at the Hall of Justice on September 13, 2018, yet the motion was never processed by the Bronx County Clerk's Office or set for a return date.  *Id.* ¶¶ 5–6.  Encarnacion alleges that the motion wasn't processed because Foggie and the motion clerk "intercepted, conspired, and ultimately confiscated" Encarnacion's mail.  *Id.* ¶ 6.  Three months after his receipts showed his motion had arrived at the Hall of Justice, Encarnacion wrote another letter to the Clerk's Office.  *Id.* ¶ 7.  This letter, dated December 17, 2018, accused the Bronx County Clerk's Office and the Bronx District Attorney's Office of violating his due process rights by not filing the August 2018 Motion, because "the failure in processing [his] motion . . . constitute[d] a violation of [his] rights to have access to the courts."  *Id.*  The letter also requested that the August 2018 Motion be converted into an Article 70 habeas corpus proceeding granting his immediate release from custody.  Doc. 19-1 at 8.

Encarnacion also sent a copy of his December 17, 2018 letter directly to Justice Martin Marcus of the Bronx County Supreme Court, who was considering a separate § 440.20 motion from Encarnacion, which he had previously filed on July 16, 2018.  Doc. 19 ¶ 12, *see* Doc. 19-1 at 186.  Encarnacion hoped that the justice would forward the letter to the Bronx County Clerk's Office or inquire about the August 2018 Motion.  Doc. 19 ¶ 12.  Justice Marcus denied the earlier-filed July, 2018 motion in an order dated February 5, 2019.  *Id.* ¶ 13.  His opinion shows that he interpreted the December 17, 2018

---

[2] CPL § 440.10 states that "[a]t any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment [upon various enumerated grounds]."  N.Y. Crim. Proc. Law § 440.10 (Consol. 2024).

letter as a reply to the July 16, 2018 motion he was already considering, and treated it as such. Doc. 19-1 at 45; *see also* Doc. 19-1 at 122. Justice Marcus then considered and denied Encarnacion's request to convert the August 2018 Motion into a habeas proceeding. *Id.* at 46, *see also id.* at 118.

On April 4, 2019, Encarnacion filed an Article 78 petition[3] to compel Foggie to file the August 2018 Motion. Doc. 19 ¶ 18. In opposition to the Article 78 petition, Foggie's attorney claimed that Justice Marcus's February 5, 2019 decision had already denied Encarnacion's August 2018 Motion, in addition to his July 2018 motion.[4] *Id.* ¶ 27; *see* Doc. 19-1 at 104–05. On January 21, 2020, Encarnacion wrote to Justice Marcus and asked if the August 2018 Motion had been assigned to him or if he had made a decision regarding the motion. Doc. 19 ¶ 41. Justice Marcus responded on February 6, 2020 that he had no record of the motion being filed, and that Encarnacion had no motions then pending before the Supreme Court. *Id.* After several more letters from Encarnacion, Justice Marcus informed him in a letter dated August 21, 2020 that he would treat the August 2018 Motion as filed before the court. Doc. 19-1 at 178–79. Justice Marcus provided a copy of the motion to the government, who filed a response opposing the motion on October 13, 2020. *Id.* at 188. Justice Marcus issued a decision on January 7, 2021, denying Encarnacion's August 2018 Motion in its entirety. *See id.* at 186–94. Regarding Encarnacion's allegation that members of the Clerk's Office conspired to intercept and steal the August 2018 Motion, Justice Marcus wrote that Encarnacion's certified mail return receipts "do not prove that the Clerk's Office received

---

[3] An individual may file an Article 78 petition, pursuant to N.Y. C.P.L.R. §§ 7801–06, requesting the court to order a "state body or officer" to perform a specified ministerial act that is required by law. N.Y. C.P.L.R. §§ 7801–06 (Consol. 2024).

[4] This does not appear to be accurate. *See* Doc. 19-1 at 122 (Letter from Justice Marcus to Encarnacion stating that neither his Court nor the Clerk's Office had any record of the August 2018 Motion). Justice Marcus's February 5, 2019 opinion denied Encarnacion's July § 440.20 motion and his December 17, 2018 habeas request. *Id.*

3

the August 29, 2018 motion or that the Clerk's Office refused to file it." *Id.* at 192. Justice Marcus then addressed Encarnacion's allegations of a conspiracy to prevent him from accessing the courts:

> [Encarnacion's] allegation of a conspiracy between the Bronx District Attorney's Office and the Clerk's Office to deny him access to the courts is utterly baseless, especially in light of the approximately nine post-conviction motions[5] [Encarnacion] has filed that have been addressed by trial courts and the Appellate Division, as well as his direct appeal and the various appeals he has filed from the denials of his post-conviction motions . . . [Encarnacion] has clearly not been denied access to the courts. In reality, [Encarnacion's] complaint is that none of the many courts that have presided over his appeals and motions have ruled in his favor.

*Id.* at 193.

### B. Procedural History

Encarnacion initially filed the instant action on February 28, 2022, alleging violations of his First, Fifth, Sixth, and Fourteenth Amendment rights. Doc. 2 ¶ 74. His initial complaint named seven defendants: Justice Martin Marcus of the Bronx Supreme Court; John McConnell, Counsel for the New York State Office of Court Administration; Sandra Irby, Assistant Deputy Counsel for the New York State Office of Court Administration; Shera Knight and Jennifer Russell, Assistant District Attorneys for Bronx County; Michelle Foggie, Chief Clerk for the Criminal Division of the Bronx County Supreme Court; and John Doe, the unknown motion clerk from September 13, 2018. Doc. 2 ¶¶ 4–10. The Court issued an order on May 9, 2022, dismissing the complaints against all defendants except Foggie and Doe; ordering the New York City Law Department to identify the John Doe defendant and provide his name to Encarnacion; and directing Encarnacion to file an amended complaint naming John Doe within thirty days

---

[5] Justice Marcus offered a brief summary of Encarnacion's post-conviction litigation: "[S]ince his conviction, [Encarnacion] has filed a direct appeal, three writ of error *coram nobis* applications, three CPL § 440 motions, three Article 78 petitions, and appeals of the decisions denying his various motions and petitions. His appeals and every post-conviction motion, application and petition have been denied." Doc. 19-1 at 186–87.

of learning his identity. Doc. 8. Encarnacion filed an amended complaint on July 29, 2022, identifying John Sampugnaro as the defendant previously referred to as John Doe. Doc. 19. The amended complaint, however, once again named Irby and Knight as defendants. *Id.* The Court issued an order on October 26, 2022 dismissing Irby and Knight for the same reasons specified in the Court's May 9 order. Doc. 24. The remaining defendants, Foggie and Sampugnaro, filed the instant motion to dismiss all claims on May 16, 2023. Doc. 34. In their motion, Defendants argue that they are shielded in their official capacities by sovereign immunity under the Eleventh Amendment; that they are immune from suit in their personal capacities under common law quasi-judicial immunity; and that the complaint is time-barred because it was initiated after the relevant statute of limitations expired. *See generally* Doc. 36.

## II.   LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard under Rule 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (internal citation omitted). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." Id. The same standard applies to motions to dismiss in cases brought by pro se plaintiffs. *Davis v. Goodwill Indus. of Greater New York & New Jersey, Inc.*, No. 15 Civ. 7710 (ER), 2017 U.S. Dist. LEXIS 48014, at *14 (S.D.N.Y. Mar. 29, 2017) (citing *Zapolski v. Fed. Repub. of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011)). The Court remains obligated to construe a pro se complaint liberally, and to interpret a pro se plaintiff's claims as

"rais[ing] the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal citation omitted). Nevertheless, "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a pro se complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

## III. DISCUSSION

### A. Encarnacion's Claim is Barred by the Statute of Limitations

Defendants argue that the claim must be dismissed because it was filed after the applicable statute of limitations had expired. Doc. 36 at 5–6. The parties agree that New York has as three-year limitations period for § 1983 claims. Doc. 36 at 6; Doc. 42 ¶ 16. Defendants argue the claim accrued in late 2018 when Encarnacion learned his August 2018 Motion had not been filed, and so Encarnacion's deadline to file was by late 2021. Doc. 36 at 6; Doc. 44 at 4–5. Encarnacion responds that he had "no clue or idea what happened with [his] motion" until March, 2020, when Justice Marcus wrote him to say that the court had no record of his August 2018 Motion being filed in the court, and therefore the statutory period did not end until March of 2023. Doc. 42 ¶¶ 15–16.

For § 1983 claims, "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). In New York, then, the relevant period is three years. *Adeniji v. N.Y.C. Police Dep't*, No. 21 Civ. 0664 (LLS), 2023 U.S. Dist. LEXIS 22168, at *5 (S.D.N.Y. Feb. 7, 2023) (citing N.Y. C.P.L.R. § 214 (Consol. 2024)). A §1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hogan*, 738 F.3d at 518 (internal quotation marks and citation omitted).

Encarnacion's alleged injury occurred when Defendants allegedly prevented the August 2018 Motion from being filed with the courts. *See generally* Doc. 19.

Encarnacion's argument in opposition to this motion that he had "no clue or idea what happened with [his] motion" until March of 2020, Doc. 42 ¶ 15, is contradicted by his own statements in the amended complaint. *See* Doc. 19 ¶ 7 (describing the December 17, 2018 letter in which Encarnacion accused the motion clerk of the Bronx County Court of violating his rights by failing to file the August 2018 Motion). Encarnacion's December 17, 2018 letter to the Bronx court motion clerk clearly states that he knew his motion had never been filed, and that "the failure in processing [his] motion . . . constitute[d] a violation of [his] rights to have access to the courts." Doc. 19-1 at 8. Thus, Encarnacion knew or had reason to know of the injury by at least December 17, 2018. *See Hogan*, 738 F.3d at 518.

Even if the Court assumes that Encarnacion was still unsure of the disposition of the August 2018 Motion—notwithstanding his December 2018 letter outlining the very same conspiracy allegations that underlie the instant motion—the amended complaint makes clear that Justice Marcus's February 5, 2019 decision removed any doubt. Doc. 19 ¶ 16 (stating that Encarnacion knew his August 2018 Motion had never been filed after Justice Marcus's February 5, 2019 decision). Therefore, at the latest, the three-year statute of limitations began to run on that date and ended on February 5, 2022, 17 days *before* he filed the instant action. Even with the most generous reading of the timeline in the amended complaint, Encarnacion failed to file his complaint within the three-year limitations period. Doc. 2. Accordingly, Encarnacion's complaint is time-barred and must be dismissed. *See Adeniji*, 2023 U.S. Dist. LEXIS 22168, at *7.

### B. Absolute Quasi-Judicial Immunity Bars the Claim against the Defendants

In the alternative, Defendants claim that Encarnacion's claims are barred because absolute quasi-judicial immunity protects them from suit in their individual capacities.[6]

---

[6] Defendants' motion to dismiss also argues that Sovereign Immunity under the Eleventh Amendment shields them from suit in their official capacities. Doc. 36 at 4. If Encarnacion intended to make claims against Defendants in their official capacities, he effectively withdrew those claims in his response, stating

Doc. 36 at 4–5.  They argue that this immunity shields the clerk of court and deputy clerks from suit when they perform judicial acts within their judicial capacities, like filing and docketing legal documents.  *Id.* at 5.  Encarnacion argues that quasi-judicial immunity does not apply because Defendants' actions were not the result of established court practice or directed by a judicial officer.  Doc. 42 ¶ 14.

Judicial immunity extends from judges to "others who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *see Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (recognizing quasi-judicial immunity for court clerks).  Courts have held that "Clerk's Office activities of filing and docketing legal documents" are an "integral part of the judicial process" and are thus entitled to absolute immunity.  *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011); *see also Bey v. New York*, No. 11 Civ. 3296 (JS), 2012 U.S. Dist. LEXIS 136553, at *21 (E.D.N.Y. Sept. 21, 2012) (holding that court clerks were entitled to absolute quasi-judicial immunity for tasks that are integral to the judicial process); *Humphrey v. Court Clerk for the Second Circuit*, No. 08 Civ. 0363 (DNH), 2008 U.S. Dist. LEXIS 35912, at *7 (N.D.N.Y. May 1, 2008) (explaining that court clerks enjoy absolute immunity "if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court") (citing *Rodriguez*, 116 F.3d at 67).  But where a court clerk refuses to accept papers for a litigant to commence a new action, some courts have found a possible violation of his or her rights.  *See Le Grand v. Evan*, 702 F.2d 415, 418 (2d Cir. 1983) ("The refusal of a clerk of a court to accept the papers of a litigant seeking to commence an action under a state statute may deprive that litigant of federal constitutional rights . . . many courts have accorded clerks only a qualified 'good faith' immunity from liability arising from ministerial acts.")).

---

that "the Defendants are being sued in there [*sic*] personal capacity so the Eleventh Amendment does not apply here."  Doc. 42 ¶ 13.

8

Defendants here were engaged in the type of quasi-judicial activity that entitles them to absolute immunity. The defendant clerks are accused of failing to file a motion Encarnacion sent to the court, and clerk "'activities of filing and docketing legal documents' are an 'integral part of the judicial process' which are entitled to absolute immunity." *McKnight*, 699 F. Supp. 2d at 526 (quoting *Pikulin v. Gonzales*, No. 07 Civ. 412 (CBA), 2007 U.S. Dist. LEXIS 25551, at \*6 (E.D.N.Y. Apr. 5, 2007)). This case is similar to *McKnight*, in which the plaintiff brought suit against the Clerk of the Court alleging that he had failed to process three motions, thereby depriving him of constitutional, civil, and other rights. *Id.* at 525. The plaintiff claimed that he mailed two of the motions to the clerk, and hand-delivered the third. *Id.* at 525–26. The court held that the clerk was entitled to absolute immunity, because filing a motion is a "discretionary action[] of a judicial character or [is an] action[] made pursuant to established court practices." *Id.* at 526.

The allegations in the instant case are similar to *McKnight*, although in this case Encarnacion does not sufficiently allege that the Clerk's office ever received his motion.[7] As noted in Justice Marcus's opinion, "the Clerk's Office had no record of [the August 2018 Motion]," and the certified mail receipts Encarnacion produced "do not prove that the Clerk's Office received the August 29, 2018 motion or that the Clerk's Office refused to file it." Doc. 19-1 at 187, 192; *see also* Doc. 19-1 at 193 ("[T]he Clerk's Office had not received the instant CPL § 440.10 motion . . . ."). Justice Marcus further found that Encarnacion's claim of a conspiracy to deny him access to the courts was "utterly baseless."[8] *Id.* at 193. In *McKnight*, the court held that the clerk had immunity even

---

[7] Encarnacion's claims that the Defendants "intercepted, conspired, and ultimately confiscated" his mail, Doc. 19 ¶ 6, as part of a broad conspiracy to deny him access to the courts, are the type of "legal conclusion couched as a factual allegation" that the Court is not required to accept as true. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

[8] Defendants' motion to dismiss does not address res judicata or collateral estoppel, although they mention it in their reply brief. *See* Doc. 44 at 4. Federal courts are required to give preclusive effect to state court

when he had been directly handed a motion that he subsequently did not file, because the complaint failed to allege that the clerk varied from the court's established procedures and requirements for filing a motion. *McKnight*, 699 F. Supp. 2d at 526. Aside from Encarnacion's conclusory assertions of an ongoing conspiracy, nothing in the complaint shows that the Defendants departed at any point from established court practices, or even received the motion at issue. *See* Doc. 19-1 at 187, 192–93. Therefore, Defendants are entitled to absolute quasi-judicial immunity because their behavior consisted of "discretionary actions of a judicial character or . . . actions made pursuant to established court practices." *Id.*; *see also Barton v. Clark*, No. 23 Civ. 5827 (LGS), 2023 U.S. Dist. LEXIS 188432, at *8 (S.D.N.Y. Oct. 19, 2023) ("[C]ourt clerks are absolutely immune from suit for functions which are administrative in nature if the task was undertaken . . . pursuant to the established practice of the court.") (internal quotation marks and citation omitted).

*Le Grand* is not to the contrary. 702 F.2d at 415 (2d Cir. 1983). In that case, two clerks were alleged to have repeatedly refused to accept applications for various judicial filings. *Id.* at 416. The clerks were alleged to have acted without any legal reason, in bad faith, and with malice. *Id.* The Second Circuit's decision only went so far as to determine that such allegations raised "a non-frivolous issue," and noted in dicta that "many courts" only accorded clerks a qualified "good faith" immunity for ministerial acts. *Id.* at 418. Some district courts in this Circuit have interpreted this to mean that while court clerks are entitled to absolute quasi-judicial immunity for conduct "closely

---

judgments whenever other courts from that state would do so. *Whitfield v. City of N.Y.*, No. 22 Civ. 412, 2024 U.S. App. LEXIS 6230, at *31 (2d Cir. Mar. 15, 2024). Therefore, the preclusive effect of Justice Marcus's opinion from the Bronx Supreme Court is determined by New York Law. *See Simmons v. Trans Express Inc.*, 955 F.3d 325, 328 (2d Cir. 2020) (stating that New York law determines the preclusive effect of a New York judgment in federal court). In New York, collateral estoppel is waived unless it is raised in a motion or responsive pleading. *Mayers v. D'Agostino*, 58 N.Y.2d 696, 698 (1982). Arguments cannot be properly raised for the first time in a reply brief. *See Waldorf v. Maher*, 201 N.Y.S.3d 147, 148 (App. Div. 2d Dept.) ("[A]rguments raised for the first time in a reply brief are not properly before this Court.") (citations omitted). The argument is therefore deemed waived by Defendants, and this Court does not address the preclusive effect of the Bronx Supreme Court's January 7, 2021 decision.

10

associated with the judicial process," *Cleavinger*, 475 U.S. at 200, they only enjoy "qualified, good faith immunity" for tasks involving "ministerial, non-judicial duties." *See Dinsio v. Appellate Div.*, No. 16 Civ. 0324 (GTS), 2017 U.S. Dist. LEXIS 109378, at *34 (N.D.N.Y. July 14, 2017); *see also Isasi v. Heinemann*, No. 08 Civ. 5284 (BMC), 2009 U.S. Dist. LEXIS 4392, at *4 (E.D.N.Y. Jan. 21, 2009).  Even if this Court determined that Defendants' failure to process the August 2018 Motion was part of a ministerial, non-judicial duty, they would still be protected by qualified immunity because there is no credible, non-conclusory allegation of bad faith.  *See Kitchen v. Doe*, No. 88 Civ. 7885 (PNL), 1991 U.S. Dist. LEXIS 460, at *3 (S.D.N.Y. Jan. 16, 1991) (holding that "[p]roof of bad faith or maliciousness is necessary to overcome" a court clerk's qualified immunity).  Encarnacion's complaint contains nothing more than unsupported conclusions that the Defendants conspired to steal his mail.  *See generally* Doc. 19; *see also* Doc. 19-1 at 193–94.  Beyond those conclusory assertions, Encarnacion offers nothing to support the assertion that the Defendants acted in bad faith or with malice.  Accordingly, even if Defendants were not protected by absolute quasi-judicial immunity, they would still be entitled to a qualified "good faith" immunity and the claim against them must be dismissed.  *Dinsio*, 2017 U.S. Dist. LEXIS 109378, at *34; *Le Grand*, 702 F.2d at 418.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate this motion, Doc. 34, and to close the case.

It is SO ORDERED.

Dated:   March 27, 2024
         New York, New York

                                                              _____
                                                              EDGARDO RAMOS, U.S.D.J.